IN RE the MARRIAGE OF:

Kay J. WIERMAN, Petitioner-Respondent,

v.

Frank S. WIERMAN, Appellant-Petitioner.

Supreme Court

*No. 84–1400. Argued April 1, 1986.—Decided June 4, 1986.*

(Also reported in 387 N.W.2d 744.)

For the appellant-petitioner there were briefs by *James J. Podell* and *Law Offices of James J. Podell,* Milwaukee, and oral argument by *Mr. Podell.*

For the petitioner-respondent there was a brief by *William R. Powell* and *Hopp, Hodson, Powell & Raftery*, Sheboygan, and ·oral argument by *William R. Powell.*

SHIRLEY S. ABRAHAMSON, J.   This is a review of an unpublished decision of the court of appeals filed March 19, 1985, which summarily affirmed a judgment of the circuit court for Milwaukee county, Leander J. Foley, Jr., circuit judge, dividing property on divorce.[1] The dispute in this case centers on whether Kay Wierman's interest in a real estate venture is her property that is not divisible upon divorce, or property that is divisible upon divorce.

The circuit court's judgment excluded the value of Kay Wierman's interest in the real estate venture from the divisible marital estate, pursuant to sec. 767.255, Stats. 1983–84, characterizing it as her property acquired by gift. The court of appeals affirmed the judgment of the circuit court.

We affirm the circuit court's determination that Kay Wierman acquired her interest in the real estate venture as a gift. Furthermore, we conclude that the sales of real estate owned by the venture and the reinvestment of the proceeds from the sales in other assets owned by this venture did not change Kay Wierman's interest in the real estate venture from her property acquired by gift to property subject to division on divorce. Accordingly, we affirm the decision of the court of appeals.

Section 767.255, which provides for division of property upon divorce, designates certain property as

---

[1] We do not review that portion of the court of appeals' decision summarily reversing the circuit court's decision regarding child support.

property subject to division on divorce (hereinafter referred to as marital property) and other property as property generally not divisible upon divorce (hereinafter referred to as separate property). Section 767.255 provides that property acquired by a spouse by gift remains the separate property of the donee-spouse and is usually not subject to division upon divorce. The statute provides as follows:

> "Upon every judgment of annulment, divorce or legal separation . . . the court shall divide the property of the parties and divest and transfer the title of any such property accordingly. . . . Any property shown to have been acquired by either party prior to or during the course of the marriage as a gift, bequest, devise or inheritance or to have been paid for by either party with funds so acquired shall remain the property of such party and may not be subjected to a property division under this section except upon a finding that refusal to divide such property will create a hardship. . . ."[2]

In applying sec. 767.255 to this case, the court must decide two issues. First, was the wife's interest in the real estate venture originally acquired by gift? Second, if the interest was acquired by gift, was it separate property or marital property at the time of the divorce?

We shall briefly recite the facts relevant to the first issue of whether the interest was acquired as a gift. The Wiermans were married on June 28, 1958, in Sheboygan County, Wisconsin. In 1970, Eugene Koning, a real estate developer in Sheboygan county, transferred one-half of his interest in a real estate venture to his two daughters, Kay Wierman and Carmen Neese, creating the venture then known as K-N-W

---

[2] The circuit court determined that there was no hardship and neither party asserts the hardship exception in this case.

(Koning-Neese-Wierman). Between 1970 and 1975 Mr. Koning made additional transfers of real estate to his daughters' half share of K-N-W. In 1975 Mr. Koning transferred his remaining one-half interest in K-N-W to his daughters, completely divesting himself of any ownership interest in the venture, and the real estate venture then became known as N-W (Neese-Wierman).

Mr. Koning's transfers were generally structured as part gift and part purchase, with the purchase price payable in installments. Mr. Koning structured the transactions this way in order to minimize gift taxes. Each year Mr. Koning "forgave" a part of Kay Wierman's indebtedness, and Mr. Koning filed gift tax returns showing any gifts of real estate and any forgiveness of the indebtedness. Mr. Koning never received any payment from his daughters for the transfers of the real estate or for the transfer of his ownership interest in the venture. Mr. Koning testified that at no time did he ever contemplate receiving any money from either daughter and that as far as he was concerned the transfers constituted gifts.

■ The essential element of a gift challenged here is the intent of the donor.[3] Intent is a fact, and the circuit court's findings of fact concerning the transferor's intent will be sustained unless clearly erroneous. *In the Matter of Estate of Alphonse Reist,* 91 Wis. 2d 209, 218, 281 N.W.2d 86 (1979); sec. 805.17(2), Stats. 1983–84. The circuit court found that although the transfers

---

[3] In addition to donative intent, three other elements are necessary to establish a gift: delivery, termination of the donor's dominion over the gift, and dominion in the donee. The only element the parties challenge in this case is Mr. Koning's donative intent.

were structured as part gift and part purchase for tax purposes, "the real estate in question was gifted to Kay [Wierman] by her parents and not sold to her as [Frank Wierman] argues."

There is no evidence in this record to support Frank Wierman's assertion that any "sale" ever took place. The record shows that Mr. Koning has never received any money from his daughters for the transfers and never intended to "sell" the property to his daughters. His sole intention was to make a gift of the property in question to his daughters. We conclude that the circuit court's finding that Kay Wierman acquired her interest in the real estate venture by gift was not clearly erroneous. Section 805.17(2), Stats. 1983–84.

We turn now to the second issue. Frank Wierman asserts that even if the transfers from 1970 to 1975 were gifts, Kay Wierman's interest in the real estate venture was marital property at the time of the divorce. He contends that because the originally gifted real estate was sold and the proceeds from these sales were used to acquire additional real estate (which in turn may have been developed and sold by the venture), Kay Wierman's interest in the real estate venture was changed from separate property to marital property subject to division upon divorce.

We briefly summarize the facts that are relevant to this issue. All parcels of real estate originally transferred to Kay Wierman and her sister (except for one lot) have been sold by the venture and the proceeds from the sales have been invested in other real estate,

in life insurance policies, in bank accounts, in an IRA account, and in a Keogh account, all held by N-W.[4]

No income has been distributed by N-W to the Wiermans except sums needed to pay income taxes incurred by Kay Wierman. Under the law she is required to report the profits from the venture on her personal tax returns. The circuit court concluded that the way these tax payments were handled "is evidence of a genuine effort to prevent the commingling of funds to the financial detriment of the partnership."

The circuit court found that Mr. Koning had exclusive managerial control over the venture, both before and after he transferred his one-half interest to his daughters. He kept the books, made the business decisions, developed the real estate, sold lots and reinvested the proceeds from these sales. He operated the business without any aid or assistance from his daughters or their families, and without any compensation for his efforts. Neither Kay Wierman nor Frank Wierman participated in any way in the real estate venture. Neither of them procured buyers for the real estate, or participated in the sale or acquisition of land; neither of them signed any checks or drafted any deeds; and neither of them received any proceeds from the venture other than some money for tax purposes.

When the venture experienced financial difficulties from 1979 to 1981, with expenses exceeding proceeds from the sale of real estate, Mr. Koning advanced

---

[4] The circuit court found that the Keogh plan held by N-W was the result of self-employed income earned by Kay Wierman during the marriage and, like the income earned by Frank Wierman, it was used to purchase marital assets subject to division upon divorce. The circuit court held that the Keogh plan was marital property subject to division. Neither party challenges this finding.

431

$181,500.00 to the venture—without interest—in order to meet those expenses. At the time of trial N-W owed him $83,000. The Wiermans never contributed funds to the venture.

The essence of Frank Wierman's argument is that separate property is exempt from property division upon divorce only if it retains its character as separate property at the time of the divorce. A change in the character of the property from separate property to marital property is often referred to as transmutation. *See Bonnell v. Bonnell,* 117 Wis. 2d 241, 344 N.W.2d 123 (1984); *Weiss v. Weiss,* 122 Wis. 2d 688, 365 N.W.2d 608 (Ct. App. 1984); *Trattles v. Trattles,* 126 Wis. 2d 219, 376 N.W.2d 379 (Ct. App. 1985). In effect Frank Wierman asserts that the originally gifted property has been "transmuted" from separate property to marital property by the sale of the originally gifted property and reinvestment of the proceeds. Frank Wierman's transmutation argument rests on the following reasoning: The originally gifted real estate is separate property; proceeds from the sale of the real estate (which is separate property) constitute income; income from separate property is marital property under *Arneson v. Arneson,* 120 Wis. 2d 236, 355 N.W.2d 16 (Ct. App. 1984); assets acquired with marital property (the income) are marital property; and at the time of the divorce the venture consisted entirely of marital property, that is, assets acquired with the proceeds from the sales of the originally gifted real estate.[5]

---

[5] Another view might be that the interest in the venture consisted partially of nonmarital property (the value of the originally gifted property) and partially of marital property (the profits from the sale of the originally gifted property), and the two kinds of property have been commingled. Because they cannot be distinguished,

Section 767.255 specifically provides that gifts are the donee's separate property not subject to division. The statute is silent, however, on whether to treat income derived from the gifted property, appreciation in value of the gifted property, and proceeds from the sale of gifted property as separate property or marital property.

We must therefore interpret sec. 767.255 and apply sec. 767.255 to the facts of this case to determine the character of Kay Wierman's interest in N-W, that is whether it is separate or marital property. These are questions of law, and this court need not defer to the determination of the circuit court or court of appeals.

This court has repeatedly stated that "the aim of all statutory construction is to discern the intent of the legislature," *Green Bay Packaging, Inc. v. ILHR Dept.,* 72 Wis. 2d 26, 35, 240 N.W.2d 422 (1976), and that a "cardinal rule in interpreting statutes" is to favor a construction which will fulfill the purpose of the statute over a construction which defeats the manifest object of the act. *Student Assoc. U. of Wis.-Milw. v. Baum,* 74 Wis. 2d 283, 294–95, 246 N.W.2d 622 (1976). Where one of several interpretations of a statute is possible, the court must ascertain the legislative intent from the language of the statute in relation to its context, scope, history, and objective. *State ex rel. First Nat. Bank & Trust Co. of Racine v. Skow,* 91 Wis. 2d 773, 779, 284 N.W.2d 74 (1979).

the entire interest is deemed to be marital property. According to Frank Wierman, the only separate property in the venture was a parcel of real estate which was originally gifted and was never sold.

We first look to the legislative history of sec. 767.255 for assistance in determining the character of Kay Wierman's interest in the real estate venture at the time of the divorce.[6] Section 767.255 was enacted in 1977 as part of ch. 105, Laws of 1977, the 1977 Divorce Reform Act. The original bill submitted to the Assembly (1977 Assembly Bill 100), was modeled after the Uniform Marriage and Divorce Act (UMDA) promulgated by the National Conference of Commissioners on Uniform State Laws. *Dixon v. Dixon,* 107 Wis. 2d 492, 499, n.6, 319 N.W.2d 846 (1982). Section 767.255 corresponds to sec. 307 of the UMDA which addresses the disposition of property upon divorce. Both sec. 767.255 and sec. 307 are premised on the concept that marriage is a partnership.

As originally drafted, sec. 307(a) of the UMDA provided that the court "shall assign each spouse's property to him." The court was then authorized to divide the marital property in just proportions. Section 307 provided that marital property does not include property acquired by gift, property acquired in exchange for property acquired by gift, or increase in value of property acquired before marriage. Section 307(b)(1)(2)(5). According to the Commissioners' Note to sec. 307 and judicial interpretation of sec. 307, appreciation in value of nonmarital property is not marital property, but income from nonmarital property is marital prop-

[6] The statement of legislative purpose for ch. 767, Stats., provides no guidance or suggestions concerning the legislative intent on this question. *See* Legislative purpose, *reprinted in* Wis. Stat. Ann. sec. 767.01 at 108 (West 1981).

erty. *See* Golden, *Equitable Distribution of Property* secs. 5.16–5.18 (1983).[7]

The court of appeals has interpreted sec. 767.255 in conformance with sec. 307. In *Plachta v. Plachta,* 118 Wis. 2d 329, 348 N.W.2d 193 (Ct. App. 1984), the court of appeals held that the appreciated value of gifted property remains separate property and is excluded from marital property under sec. 767.255, where the non-owning spouse did not make contributions to the appreciation and where the appreciation is due to general economic conditions or the normal appreciation of real estate. In that case Mrs. Plachta was given a home valued at $6,000 and held title in her own name throughout the marriage. By the time of the divorce the value of the home had appreciated to $27,500. Mr. Plachta had paid all real estate taxes and performed minor maintenance and repairs on the home. The circuit court found that the appreciation was due to general economic conditions of inflation and normal appreciation of real estate, not to Mr. Plachta's efforts. On appeal, the court of appeals held that the increase in value due to inflationary conditions was entitled to the same exemption from property division as the un-

---

[7] In 1973, sec. 307 was amended to provide two alternative provisions. Alternative A proceeds upon the principle that all property of the spouses, however acquired, should be regarded as assets of the married couple, to be apportioned equitably between the spouses. Alternative B is designed for community property states and permits courts to divide "community property" after considering certain criteria. Both of these alternatives recognize that the spouses have been partners in the marriage and require courts to look beyond title in deciding how much each spouse should share in the assets to be distributed. *See* Comment, *The Development of Sharing Principles in Common Law Marital Property States,* 28 U.C.L.A.L. Rev. 1269, 1287 (1981).

derlying gifted asset, when the value of the nonmarital asset had increased without any contributions from the non-owning spouse.

In *Arneson v. Arneson,* 120 Wis. 2d 236, 355 N.W.2d 16 (Ct. App. 1984), the court of appeals held that income from separate gifted property is marital property and that property acquired with this income is marital property. In *Arneson,* the husband had acquired, by gift and inheritance, shares of stock in the Arneson Foundry Corporation, a closed corporation. The circuit court excluded these gifted and inherited shares from the marital estate, and this exclusion was not at issue on appeal. The circuit court also treated as separate property certain property which the husband had purchased with dividend income generated by the gifted shares of stock. The propriety of treating this property as separate property was the issue on appeal.

The court of appeals reasoned that the exclusion from marital property is limited to property acquired by the means set forth in sec. 767.255. The court of appeals viewed the dividend income from the gifted asset as separate and distinct from the asset itself and from the appreciation of the asset. The court of appeals held that the dividend income generated by separate gifted assets and the assets acquired with the dividend income were marital assets. The court of appeals cautioned, however, that it was not determining whether the rationale of the decision should extend to income generated by excluded gifted property where the "income generated by excluded assets does not pass through the hands of the owner for purposes of further use or reinvestment . . . [or where] income or dividend plans do not vest control in the owner over such prop-

erty, or the investment, reinvestment, or other spending decisions." *Arneson,* 120 Wis. 2d at 245, n. 6.

With an understanding of the history of sec. 767.255 and these two recent court of appeals cases interpreting the section, we must now apply the statute to this case and determine whether Kay Wierman's interest in the venture is marital or separate property.

As we stated previously, Frank Wierman asserts that over the course of Mr. Koning's transactions on behalf of N-W, the increase in the value of the real estate and the proceeds from the sales were not attributable to inflation and normal appreciation as in *Plachta* but rather to income generated by the gifted property as in *Arneson.*

We begin by comparing the facts of this case to those in *Plachta* and *Arneson.* In *Plachta* the increase in value of the gifted property occurred because of normal market conditions without any effort by the non-owning spouse. Similarly in this case the value of the gifted property increased without any efforts from the non-owning spouse. The increased value in this case is, however, attributable not solely to market conditions but at least in part to Mr. Koning's managerial skills.

In *Plachta* and in *Arneson* the separate property had never been sold. In this case the originally gifted property (with the exception of one parcel) has been sold, and the proceeds from the sales reinvested in N-W. All of the property held by N-W at the time of the divorce can be traced to the real estate originally given to the daughters. Ordinarily sales or exchanges may change the identity or form of the property but do not necessarily change the character of the property from separate to marital property.

Frank Wierman characterizes the proceeds of the sales as income under the reasoning in *Arneson*. There are, however, significant differences between the dividend income in *Arneson* and the proceeds of the sales in this case. In *Arneson,* the entity (a corporation) divested itself of its earnings. The owner-husband then had an interest in the entity (shares of stock) and a separate and distinct property—a cash dividend. The originally gifted property (shares of stock) remained separate and distinct from the income (cash dividend) it generated. The owner-husband of the gifted property received and controlled the income.

In this case, the originally gifted property (the interest in N-W) did not generate income separate and distinct from itself; the real estate held by N-W was sold and the proceeds—which represented a return of capital and profits—were retained in the venture, increasing the value of N-W. N-W, an entity sometimes referred to as a joint venture and sometimes as a partnership, never divested itself of its earnings. The proceeds of the sales never came into Mrs. Wierman's possession or control; they were retained by N-W over which Mr. Koning apparently had exclusive managerial control.

Although *Plachta* and *Arneson* are important in analyzing this case, it is apparent that these cases do not furnish a satisfactory solution to this case because neither case is factually analogous to this case.[8] We

---

[8] Frank Wierman relies on two other recent decisions which we do not find helpful. *Anstutz v. Anstutz,* 112 Wis. 2d 10, 331 N.W.2d 844 (Ct. App. 1983), discusses commingling of separate and marital assets. We have concluded in this case that all the transfers from Mr. Koning to Kay Wierman were Mrs. Wierman's separate

therefore look to the principles of equitable distribution underlying *Plachta, Arneson,* and sec. 767.255 for assistance in deciding this case.

The principles of equitable distribution for allocating property upon divorce are based upon the concept that marriage is a partnership or a shared enterprise in which each of the spouses makes a different but equally important contribution to the family and its welfare and to the acquisition of its property. Because each spouse contributes equally to the prosperity of the marriage by his or her efforts, each spouse has an equal right to the ownership of the property upon a divorce. *See* Golden, *Equitable Distribution of Property* sec. 1.01 (1983); Comment, *The Development of Sharing Principles in Common Law Marital Property States,* 28 U.C.L.A. L. Rev. 1269, 1308–1311 (1981).

The premise of equitable distribution in property division in Wisconsin was described in *Lacey v. Lacey,* 45 Wis. 2d 378, 382, 173 N.W.2d 142 (1970), as follows:

"The division of property of the divorced parties rests upon the concept of marriage as a shared enterprise or joint undertaking. It is literally a partnership, although a partnership in which contribu-

---

property acquired by gift and that the proceeds from the sales are separate property. All property of N-W was kept apart from any other property. *Anstutz* is inapposite because in this case there is no commingling of separate and marital property. In *Bonnell v. Bonnell,* 117 Wis. 2d 241, 344 N.W.2d 123 (1983), this court held that by transferring part of her separate property to her husband, Mrs. Bonnell changed the character of her property. In this case there was no transfer of title. The circuit court found that Kay Wierman did not intend to give any of her interest in the venture to Frank Wierman.

tions and equities of the parties may and do differ from individual case to individual case."

■

The equitable distribution-partnership concept of marriage recognizes that a marriage possesses an important, intangible asset: the capability of both spouses to contribute to the marriage and to the acquisition of property through their labor. To the extent that either spouse is remunerated for his or her labor during the marriage, the remuneration is marital property. Furthermore, the equitable distribution-partnership concept of marriage in Wisconsin recognizes that property acquired by gift is separate property because it was not obtained through the efforts of the marital partnership but from an independent source. Thus sec. 767.255 allows a spouse to retain separate property acquired by gift and to acquire marital property through the efforts of either spouse.

If the separate asset increases in value due to the efforts and abilities of the non-owning spouse, the court of appeals has intimated that the appreciation may be viewed as part of the marital estate under the doctrine of equitable distribution. *See Plachta, supra* 118 Wis. 2d at 334. *Plachta* did not address the question whether the appreciation is to be viewed as separate property or part of the marital estate when the value of a separate asset increases due to the effort and abilities of the owning spouse. In this case neither spouse contributed time or effort to N-W, and the increase in value is not due to the efforts or abilities of either spouse.

The increase in the value of Kay Wierman's separate property was due to market conditions or to the efforts of Mr. Koning. Mr. Koning's valuable personal services as business manager were obviously a gift to

his daughter. Thus the increase in value of Kay Wierman's interest in N-W is attributable not to the efforts of either spouse or to the marital partnership but to a source independent of the marriage. Under the principles of equitable distribution, Kay Wierman's interest in the venture should be viewed as retaining its character as separate gifted property and not as marital property.

We summarize the facts: the interest in the venture began as separate property acquired by gift. The increase in the value of the venture occurred without any effort on the part of Frank Wierman, the nonowning spouse, or Kay Wierman, the owning spouse. The increase in value of the venture was due in large measure to market conditions and the valuable services rendered to the venture by the original donor as a further gift to Kay Wierman. Kay Wierman had no control over the venture or the proceeds from the sales. The venture retained all proceeds from the sales except distributions made for payment of taxes. Frank Wierman does not assert that the venture unreasonably retained earnings or that any fraudulent or other scheme was in progress to deprive Frank Wierman of income of separate property.

Considering these facts, sec. 767.255, the *Plachta* and *Arneson* cases, and the principles of equitable distribution, we conclude that Kay Wierman's interest in N-W remained her separate property at the time of divorce. We affirm the decision of the court of appeals which affirmed the circuit court's judgment that Kay Wierman's interest in the real estate venture was separate property.

*By the Court.*—The decision of the court of appeals is affirmed.