IN RE the MARRIAGE OF: Edward P.
HALDEMANN, Petitioner-Appellant,

v.

Theresa G. HALDEMANN, Respondent.†

Court of Appeals

*No. 87–1908. Submitted on briefs February 12, 1988.—Decided
May 19, 1988.*

(Also reported in 426 N.W.2d 107.)

† Petition to review denied.

For the petitioner-appellant the cause was submitted on the briefs of *Scott B. Rasmussen,* and *Rasmussen Law Offices,* of Beaver Dam.

For the respondent the cause was submitted on the brief of *Maryann S. Schacht,* and *Schacht & Schacht,* of Beaver Dam.

Before Dykman, Eich and Sundby, JJ.

SUNDBY, J. Edward Haldemann appeals from the property division in a divorce judgment. The issues are: (1) Is the increase in value of Theresa's inherited property, if due to Edward's efforts and abilities, part of the marital estate which shall be divided pursuant to sec: 767.255, Stats? (2) Is the increase in value of the farm and farm buildings attributable in whole or in part to the unusual and uncompensated efforts and abilities of Edward? (3) Is the finding of the family court that the modifications of the farm and the farm buildings were maintenance and not improvements clearly erroneous? We resolve these issues in Edward's favor, reverse the judgment and remand.

## I.

## BACKGROUND OF THE CASE

Theresa inherited a farm she and her first husband occupied during their marriage. When the parties married, Edward moved to the farm. They lived there throughout the marriage. Theresa has maintained the title to the farm and the residence in her name.

It is undisputed that during the marriage Edward made repairs and additions to the farm and its buildings. Theresa paid the costs of materials used by Edward in this work. The family court found that the additions and repairs were maintenance and not improvements. It refused to divide the increased value of the farm and its buildings.

## II.

## INCREASED VALUE OF THE FARM AS PART OF THE MARITAL ESTATE

Section 767.255, Stats., provides in part:

Any property shown to have been acquired by either party prior to or during the course of the marriage as a gift, bequest, devise or inheritance or to have been paid for by either party with funds so acquired shall remain the property of such party and may not be subjected to a property division under this section except upon a finding that refusal to divide such property will create a hardship on the other party or on the children of the marriage, and in that event the court may divest the party of such property in a fair and equitable manner.

Edward claims that the trial court abused its discretion in not awarding him, on grounds of hardship, one-half the increased value of Theresa's farm attributable to his efforts. *See Plachta v. Plachta,* 118 Wis. 2d 329, 333–34, 348 N.W.2d 193, 195 (Ct. App. 1984). Theresa counters that mere appreciation in value cannot change separate property into marital property subject to division under sec. 767.255, Stats. If, however, we conclude otherwise, she argues that the appreciation must be directly caused by the unusual and uncompensated efforts of the nonowning spouse. 

First, we conclude that the appreciation in value of separate property due to the efforts and abilities of the nonowning spouse, is part of the marital estate to be divided pursuant to sec. 767.255, Stats. We further

hold that it is not necessary that the nonowning spouse demonstrate that a refusal to divide the appreciation in value will create a hardship on him or her or on the children of the marriage.

In *Plachta,* 118 Wis. 2d at 334, 348 N.W.2d at 195–96, we held that, "[f]ailure to divide separate property could cause a hardship when the nonowning spouse contributes to the property's increase value." In *In re Marriage of Wierman v. Wierman,* 130 Wis. 2d 425, 440, 387 N.W.2d 744, 751 (1986), the court characterized our holding as an "intimat[ion]" that appreciation in value of separate property which results from the efforts and abilities of the nonowning spouse may be viewed as part of the marital estate under the doctrine of equitable distribution. We now establish that intimation as a rule of law. It is consistent with the equitable distribution-partnership concept of marriage. *See Wierman,* 130 Wis. 2d at 439–40, 387 N.W.2d at 750. It is also consistent with the treatment of efforts of the nonowning spouse which cause substantial appreciation in the value of nonmarital property. *See* sec. 766.63(2), Stats. As we have previously recognized, an asset may be part separate property of one spouse and part of the marital estate subject to division. *See Marriage of Torgerson v. Torgerson,* 128 Wis. 2d 465, 469–70 n. 3, 383 N.W.2d 506, 508 (Ct. App. 1986).

We accept Theresa's argument that the efforts and abilities of the nonowning spouse must be unusual and uncompensated only in the sense that something more than performance of usual and normal marital responsibilities is required. We do not hold that the efforts and abilities of the nonowning spouse must be

beyond or apart from the efforts and abilities of the owning spouse. "The equitable distribution-partnership concept of marriage recognizes that a marriage possesses an important, intangible asset: the capability of both spouses to contribute to the marriage and to the acquisition of property through their labor. To the extent that either spouse is remunerated for his or her labor during the marriage, the remuneration is marital property." *Wierman,* 130 Wis. 2d at 440, 387 N.W.2d at 750. Thus, if during the marriage, both spouses contribute to the acquisition of property through their abilities and efforts, that property is part of the marital estate. The property acquired may be the appreciation in value of an asset separately owned by one of the spouses.

However, merely maintaining the marital relationship and performing the customary obligations of one spouse to the other does not constitute a contribution of the nonowning spouse which requires that the appreciation in value of separately owned property be treated as part of the marital estate. *See In re Marriage of Herr,* 705 S.W.2d 619, 623 (Mo. Ct. App. 1986) (wife's performance of usual spousal duties was not such a substantial contribution as to cause an increase in value of separate property); *Applegate v. Applegate,* 365 N.W.2d 394, 397 (Neb. 1985) (wife's contributions were typical of a wife of a farmer-cattle raiser and did not contribute directly to increased value of property). Similarly, the mere fact of maintenance of a normal marital relationship does not constitute compensation for the efforts and abilities of the nonowning spouse.

302

## III.
## EDWARD'S EFFORTS AND ABILITIES

We next consider Theresa's argument that the efforts and abilities Edward contributed to the repairs and additions to the farm and its buildings were not unusual and were fully compensated.

The family court found that Edward's "participation" was largely to improve his and Theresa's day-to-day living accommodations and to engage in a hog-raising operation. Theresa argues that Edward's contributions were routine maintenance, made in the course of maintaining his garage business and a hog operation and working with her and others to make the farm more comfortable.

First, it begs the question to dismiss Edward's efforts and abilities as solely to improve his and Theresa's living situation or to make the farm more comfortable. If because of his efforts to make the farm a better place to live, he caused Theresa's separate property to increase in value, that increase is part of the marital estate.

Second, the record establishes that the hog-raising operation was an effort of the marital partnership. Edward and Theresa maintained a joint checking account to which, initially, they contributed equally. Farm utilities and household expenses were paid from the account. The income from the hog operation went into the account. Until 1986, they filed joint income tax returns and the general farm utility and other farm expenses were deducted. Theresa benefited from the hog operation because the income from the hog operation provided a source against which she could deduct general farm expenses. Theresa kept the income from the farm rental in her individual ac-

count. Because the parties jointly operated and bene-
fited from the hog raising business, we reject There-
sa's argument that Edward was compensated for his
efforts and abilities by being allowed to operate the
business on Theresa's farm rent-free.

Finally, there is no evidence to support Theresa's
argument that Edward's contributions were made in
the course of maintaining his garage business. We
therefore reject her arguments that Edward's contri-
butions were not unusual and that he was compensat-
ed for them.

### IV.

### RESULT OF EDWARD'S EFFORTS:<br>MAINTENANCE OR IMPROVEMENTS?

The trial court found:

> Considering that all out-of-pocket expenses for the
> listed modifications of the residence and real estate
> were paid in full by [Theresa] from her own funds,
> and the fact that [Edward's] participation was
> largely to improve his own as well as [Theresa's]
> day to day living accommodations, and to engage
> in a hog raising operation, the Court finds that the
> listed modifications do not reach the level of
> "improvements" that would entitle [Edward] to
> share in any enhanced value of the residence and
> real estate of [Theresa]. The Court agrees with
> [Theresa] that the changes made fall into the
> category of "maintenance" as opposed to "improve-
> ments."

We consider irrelevant the fact that Theresa paid
for the materials and supplies which went into the
improvement of the farm and the farm buildings. That

fact could be important as tending to show that she contracted with Edward to make the improvements. However, she does not make that claim.

The fact that Edward expended some of his efforts and abilities to make the farm suitable for a hog-raising operation does not affect his claim, if in fact his efforts and abilities toward that end increased the value of the farm and the farm buildings.

The family court should have determined whether some or all of Edward's work and the additions and modifications constituted improvements to the real estate. In *United States Fire Ins. Co. v. E.D. Wesley Co.,* 105 Wis. 2d 305, 309, 313 N.W.2d 833, 835 (1982), the court adopted the definition of "improvement" set forth in *Kallas Millwork Corp. v. Square D Co.,* 66 Wis. 2d 382, 386, 225 N.W.2d 454, 456–57 (1975), as follows:

> [A] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.
>
> Similar definitions are found in 1 Bouvier's, *Law Dictionary* (Rawles 3d rev., 1914), page 1517, and Black's, *Law Dictionary* (West, rev. 4th ed., 1968), page 890.

The family court did not examine the claimed improvements to determine whether they added to or bettered the real property. It's finding that the additions and ameliorations were not improvements was based on considerations extrinsic to the claimed improvements. In light of the undisputed evidence, the court's finding is clearly erroneous.

Edward introduced through a general contractor an exhibit showing the work he performed and the improvements he made to the farm and farm buildings. Theresa challenged the number of hours Edward claimed to have worked and the value of his work but not that he did the work or made the claimed improvements.

The uncontradicted evidence established that Edward did, or assisted in doing the following work, and making the following additions and modifications. He assisted in the planning and construction of a new sunroom, converted a former chicken coop into a two-car garage, planted trees, seeded the lawn, installed a water heater and softener, rewired parts of the residence, wired the barn, built hogpens, removed an old silo foundation, filled an old cistern, leveled dirt for cementing, removed an old chimney and closed the roof, insulated the house ceiling, relocated a window in a lower bedroom, paneled walls, laid carpet in the second bedroom, installed a stairway iron railing, installed gutters and downspouts, built an insulated wall on one side of the house, constructed a base for a TV tower, planted trees to prevent soil erosion, removed the old porch and asbestos siding, backfilled around the garage, and constructed a dry well for roof drainage. Much of the work Edward performed and the changes which his efforts made to the farm and its building constitute improvements as defined in *Kallas Millwork Corp.*, 66 Wis. 2d at 386, 225 N.W.2d at 456–57.

Based upon the appraisal of the farm in the probate proceedings following the death of Theresa's first husband, the family court found that the fair market value of the farm and its buildings at the start

of the marriage was $164,000. Edward's real estate value witness valued the farm and its buildings as of the date of his appraisal at $228,950. Theresa's real estate value witness valued the farm and its buildings at $175,000. Both witnesses acknowledged that in the seven to eight years prior to trial, farm values had declined. Theresa's expert testified that they had declined "drastically," by as much as fifty percent. There is no suggestion in the record that the increase in value of the farm and its buildings was attributable to any unique feature of the farm or its surroundings. The only reasonable inference which may be drawn from the established facts is that Edward's efforts and abilities increased the value of the farm and farm buildings. "If only one reasonable inference is available, the drawing of that inference is a question of law." *Pfeifer v. World Service Life Ins. Co.,* 121 Wis. 2d 567, 571, 360 N.W.2d 65, 67 (Ct. App. 1984). The amount of that increase will be for the family court to determine upon remand.

*By the Court.*—Judgment reversed and cause remanded for further proceedings consistent with this opinion.