IN RE the MARRIAGE OF:

Fredric P. SPINDLER, Joint-Petitioner-Respondent-Cross Appellant,

v.

Bonita B. SPINDLER, Joint-Petitioner-Appellant-Cross Respondent.

Court of Appeals

*No. 96–0591. Submitted on briefs September 11, 1996.—Decided December 4, 1996.*

(Also reported in 558 N.W.2d 645.)

On behalf of joint-petitioner-appellant-cross respondent, the cause was submitted on the briefs of *Ann T. Bowe* of Milwaukee.

On behalf of joint-petitioner-respondent-cross appellant, the cause was submitted on the briefs of *Donald A. Levy* of Cedarburg.

Before Anderson, P.J., Brown and Snyder, JJ.

ANDERSON, P.J. Bonita B. Spindler appeals and Fredric P. Spindler cross-appeals from a judgment of divorce in which the trial court set Bonita's maintenance at $1020 per month for an indefinite period of time and it deemed property inherited by Fredric as marital property and divided it accordingly. Bonita contends that the trial court misused its discretion in ordering maintenance based on a 60/40 split of the joint income. In the alternative, Bonita argues that the $1020 is a mathematical error and the correct amount of maintenance should be $1120. Because the evidence supports the trial court's exercise of discretion and because the trial court sought a rough 60/40 split and $1020 achieved that goal, we affirm this portion of the judgment.

Fredric cross-appeals the inclusion of the Crandon cottage in the marital property division. The trial court determined that based on Bonita's contributions throughout the marriage, the character of the cottage

changed from inherited to marital property. We conclude that Bonita's contributions, in the form of labor, were of de minimis value and were insufficient to change the character of the cottage. Accordingly, we reverse and remand this portion of the judgment.

Bonita contends that the trial court erred in its maintenance award by ordering a 60/40 split of the joint income rather than a 50/50 split. Maintenance determinations are within the sole discretion of the trial court and we will not reverse the trial court's decision unless there is evidence of an erroneous exercise of that discretion. *Grace v. Grace*, 195 Wis. 2d 153, 157, 536 N.W.2d 109, 110 (Ct. App. 1995). We conclude that the evidence supports the trial court's maintenance determination.

On October 22, 1993, Bonita and Fredric filed a joint petition for divorce. They had been married for twenty-seven and one-half years as of the date of divorce. Fredric is an electrical engineer with a company in Milwaukee and makes approximately $60,000 per year. Bonita is an interior designer with her own interior decorating business and makes approximately $12,000 per year. The family court commissioner, after hearings on November 16, 1993, and February 24, 1994, ordered Fredric to pay Bonita temporary maintenance in the amount of $1812 per month through May 1994. Fredric continued to pay this amount until the final judgment of divorce was rendered on January 19, 1996.

On January 24, 1995, a trial to the court was held. The issues before the court were the division of gifted or inherited property, maintenance, Bonita's earning

capacity and personal property issues. In a decision and order dated June 30, 1995, the trial court found that Bonita's 1961 Corvette and Fredric's cottage lost their separate character and were included in the 50/50 property division of the marital estate. In regard to Bonita's earning capacity, the trial court relied on the testimony of Dr. Leslie Goldsmith, an expert in the field of vocational rehabilitation. Based on Goldsmith's testimony, the trial court determined that Bonita's "greater vocational prospects lie in the area of furniture sales/interior decorating [but] she has not pursued these positions with the degree of effort that would allow the court to simply accept her present income as the starting point for a division of income ." Accordingly, the court imputed $20,000 to Bonita as her annual income, or $1666 per month. The trial court further opined that Bonita has the capacity to substantially increase her income beyond $20,000 per year and based its 60/40 division of the parties' joint income on this finding. Based on Fredric's monthly income of $5300 and Bonita's imputed monthly income of $1666, the trial court ordered that Bonita be paid indefinite maintenance in the amount of $1020. The trial court's findings were embodied in the final judgment of divorce dated January 19, 1996, which Bonita appeals.

█

Our examination of the record satisfies us that the trial court's determination on this question is not a misuse of discretion. The 60/40 split was based on the trial court's conclusion that Bonita is capable of obtaining a full-time position which could increase her income beyond the $20,000 per year as imputed by the trial court. The trial court's rationale displays a

reasonable exercise of discretion. Therefore, we affirm this portion of the judgment.

■

As an alternative argument, Bonita contends that the trial court's maintenance calculation of $1020 was incorrect and that $1120 is the correct figure. Maintenance decisions are left to the sole discretion of the trial court. *Grace*, 195 Wis. 2d at 157, 536 N.W.2d at 110. At the rehearing on this issue, Bonita argued that there was a "mathematical misfiguring" and that $1120 would equalize the gross incomes. Fredric, on the other hand, pointed out that on a net after-tax basis, the court's order as uncorrected would result in a 58/42 split, or as corrected would result in a 56/44 split. "[I]n order to result in a 60/40 split of net after tax income in [Fredric's] favor, it requires a payment of $855 a month." The trial court explained its decision as follows:

> [T]he problem . . . with using the tax calc, . . . is the assumptions that have to be plugged into it are so variable from case to case that you can't really hit it exactly. But my point in the decision was to achieve a rough 60/40 split. That's the only thing you can get in a case like this. You're not going to get a precise one because their tax situation could change from year to year, and you'd have to re-figure it every year and re-run the tax calc on it so I am exactly looking for a rough 60/40 split. And I will say that the original amount of 1,020 that I came up with was an arithmetic error. But in analyzing what's been submitted since then by both counsel, it seems to me that that number, although based upon a mistake, achieves the closest thing to a rough 60/40 split. And because of that, I'll direct that that number stand and that there be no modification. It's not going down to 855, it's not going to go up to 1120.

Based on the trial court's reasoning, we find no need to correct the error in calculation.

■ On cross-appeal, Fredric contends that the trial court erred in its conclusion that the cottage changed character from inherited property to marital property and was subject to the property division. This issue is one of statutory construction of the property division statute, § 767.255, STATS., and its application to the controlling facts of this case which are essentially uncontested. Generally, property division rests within the sound discretion of the trial court. *Brandt v. Brandt*, 145 Wis. 2d 394, 406, 427 N.W.2d 126, 130 (Ct. App. 1988). However, the application of a statute to a set of facts is a question of law which we review de novo. *Trattles v. Trattles*, 126 Wis. 2d 219, 223, 376 N.W.2d 379, 381 (Ct. App. 1985).

In 1982, Fredric was gifted a cottage and parcel of land situated on Lake Lucerne in Crandon, Forest County. Fredric's grandfather built the cottage in 1922 and bequeathed it to Fredric's grandmother in 1930 when he passed away. She in turn left it to her five daughters, one of whom was Fredric's mother. In 1982, Fredric's two aunts held the remaining interests and gifted the cottage to him by deed. The title remains in Fredric's name.

Fredric testified that they have done no major improvements to the exterior of the cottage because the Forest County and Town of Lincoln zoning commission prohibits exterior improvements greater than $1000 to any cottage closer than seventy-five feet to a lake, which applies to Fredric's cottage. Even so, the roof was replaced in approximately 1992. According to Fredric's

testimony, interior improvements included: Fredric and friends tiling the kitchen and dining area; painting the interior; installing a shower; installing a pump that draws lake water to a ten-gallon electric water heater; hooking the kitchen sink to the water heater and replacing a third of the porch flooring. The improvements were paid for with commingled funds. He stated that Bonita reupholstered some furniture, painted the middle bedroom and helped replace some screens. Fredric also testified that other than four pieces of living room furniture and certain accoutrements, the remaining furniture was inherited with the cottage.

Bonita corroborated Fredric's testimony regarding her contribution to the value of the cottage. According to Bonita's testimony, she assisted with the general upkeep, such as raking and burning leaves, helping to creosote the bridge, cleaning the kitchen area, washing the draperies, dusting the floors and occasionally pulling out the pier. Bonita also testified that she helped put in the vinyl flooring in the kitchen and dining room, put in custom-made draperies, purchased lawn furniture and painted.

The estimated value of the land in 1982, according to the tax bill, was $18,000 and the improvements were valued at $16,500. An assessment in 1993 reflected these same figures. In 1994 the property was reassessed, increasing the value of the land to $29,000 while the value of the improvements remained at $16,500, with a total estimated fair market value of $51,000. The parties stipulated that the reasonable fair market value of the property in 1995 was $66,750.

At trial, Shirley Van Cleve, a licensed real estate appraiser in the Crandon area, attributed the appreciation of the real estate from 1982 to 1995 to the

lot and not to any improvements. Van Cleave testified that she conducted an appraisal of the cottage and parcel and she estimated the total fair market value to be $68,000. Van Cleve further testified that the vacant lot, if there were no cottage on it, would sell for between $50,000 and $55,000 with no improvements. According to Van Cleve's observation, the value of the cottage "had reached [a] minus condition all the way through the building," despite work done inside.

Based on this evidence, the trial court concluded that the cottage property had changed character from inherited to marital property. The trial court held:

> The next item of property that is in dispute is a cottage located in the Crandon area. Joint Petitioner Fredric inherited this property and insists that it has retained such a separate character that it should not be included in the marital estate. The Court disagrees. There appears to be a literal mountain of evidence that indicates that not only did the Joint Petitioner Bonita provide labor and other efforts to maintain and improve this property, but it is also clear that marital funds were expended in its maintenance. Clearly, this property lost its separate character and must be included in the marital estate.

██

We disagree. The trial court erred when it concluded that Bonita had proven that through her labors and the use of marital funds the cottage had lost its gifted character and must be included in the marital estate. Whether gifted or inherited property is to remain exempt from a division of the marital estate depends upon a confluence of the original status of the property, the identity of the property and the character of the property. Each component must be separately

evaluated and the evaluations brought together to ascertain whether the property has in fact become marital property. A substantial change in any of the factors could be enough to transmute gifted property into marital property. However, we caution that where, as in this case, the parties agree that one or more factors have not changed, the trial court must carefully evaluate the evidence on whether there has been a change to the remaining factor(s) that justifies stripping the gifted property of its exempt status.

In this appeal, the focal point is whether the character of the property had sufficiently changed to transmute the cottage into marital property. As we demonstrate, it is not enough that the parties continue the marital relationship and carry out the usual obligations in relationship to the property or that some marital funds are expended on routine maintenance. The changes to the property as a consequence of the marital relationship must substantially increase its value. Despite the trial court's conclusion that Bonita made efforts to "improve the property," we can find no evidence to establish that her efforts substantially increased the cottage's value. Simply because a spouse does routine maintenance is not enough of a reason to conclude that the character has been changed. Likewise, simply because marital funds are used for routine maintenance is not enough to conclude that the character has been changed. There must be more.

Section 767.255(2), STATS., provides:

> (a) Except as provided in par. (b), any property shown to have been acquired by either party prior to or during the course of the marriage in any of the following ways shall remain the property of that party and is not subject to a property division under this section:

1. As a gift from a person other than the other party.

2. By reason of the death of another, including . . . .

3. With funds acquired in a manner provided in subd. 1. or 2.

(b) Paragraph (a) does not apply if the court finds that refusal to divide the property will create a hardship on the other party or on the children of the marriage. If the court makes such a finding, the court may divest the party of the property in a fair and equitable manner.

■

The burden of proof on the question of whether an asset is exempt as gifted property rests upon the party asserting the claim to show to a reasonable certainty by the greater weight of the credible evidence that the property was gifted. *Brandt*, 145 Wis. 2d at 407-08, 427 N.W.2d at 131. Here, Bonita does not challenge the original gifted status of the cottage and Fredric has made a prima facie case that the cottage is exempt. *See id.* at 408-09, 427 N.W.2d at 131.

■

Next, we consider whether the trial court correctly concluded that the character and identity of the cottage have not been preserved. *See Popp v. Popp*, 146 Wis. 2d 778, 787, 432 N.W.2d 600, 602 (Ct. App. 1988). This burden lies with Bonita to present countervailing evidence that the character and identity have not been preserved and the cottage has lost its exempt status. *See Brandt*, 145 Wis. 2d at 409, 427 N.W.2d at 131. Whether a party has met the burden of proof is a question of law which we examine without deference to the trial court's conclusions. *Id.*

■ Identity addresses whether a gifted asset has been preserved in some present identifiable form so that it can be meaningfully valued and assigned. *See Friebel v. Friebel*, 181 Wis. 2d 285, 298, 510 N.W.2d 767, 773 (Ct. App. 1993). It is not seriously disputed that the cottage possesses the same physical form it had when it was gifted to Fredric and can be easily valued.

■ We now turn to the question of whether Bonita fulfilled her burden of proof to show that the character of the cottage had changed to marital property. Character addresses the manner in which the parties have chosen to title or treat gifted assets. *Id.* at 298, 510 N.W.2d at 772. Changing the property's title, for example, can transmute it to divisible property. *Id.* Transmutation will occur when a party transfers his or her gifted property into joint tenancy or uses the property to purchase property for the mutual enjoyment and use of the marriage or uses marital property to improve and enhance the gifted property. *See id.* at 298, 510 N.W.2d at 772-73.

According to the testimony of both Fredric and Bonita, Bonita's labor and efforts focused on maintenance and upkeep of the property, such as general cleaning and maintenance of the yard. Testimony also revealed that the appreciation in the property's value from 1982 to 1995 was due to the increase in the value of the land alone and not the improvements. Bonita's work around the property constituted maintenance and ordinary repairs, but provided no more than de minimis value to the enhanced value of the real estate and cottage.

We have previously stated that merely maintaining the marital relationship and performing customary obligations of one spouse to the other do not constitute a contribution of the nonowning spouse requiring the appreciation in value of separately owned property to be treated as part of the marital estate. *Haldemann v. Haldemann*, 145 Wis. 2d 296, 302, 426 N.W.2d 107, 109 (Ct. App. 1988). Rather, the trial court should determine whether the nonowning spouse's efforts and modifications constituted improvements to the real estate. *Id.* at 305, 426 N.W.2d at 110. An improvement is "[a] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Id.* at 305, 426 N.W.2d at 111 (quoted source omitted). Clearly, Bonita's efforts do not constitute improvements and therefore did not alter the character of the property.

Moreover, the mere use of marital funds for maintenance and upkeep is insufficient to alter the character of the property. *See id.*, 145 Wis. 2d at 302, 426 N.W.2d at 109. The key test is whether, despite the use of commingled funds, the inherited portion of the asset can still be identified and valued. *See Brandt*, 145 Wis. 2d at 412, 427 N.W.2d at 132. Here, the marital funds expended in the maintenance and upkeep of the cottage are easily ascertained. Accordingly, Fredric's gifted portion can be valued by subtracting the few expenditures made to the property from its total value. The expenditure amount from marital funds would be subject to division, while the remaining portion would be awarded to Fredric.

■■ While we conclude that Bonita's efforts were insufficient to transmute the cottage to marital property, Bonita is not necessarily barred from sharing in its increased value. "If the trial court finds that a refusal to divide such non-marital property, or its appreciated value, would create a hardship on the other spouse . . . it may in its discretion divest the donee spouse of such property in a fair and equitable manner." *Plachta v. Plachta*, 118 Wis. 2d 329, 334, 348 N.W.2d 193, 195 (Ct. App. 1984). Here, the trial court determined the cottage was subject to division; therefore, it did not consider whether the refusal to divide the cottage would create a hardship on Bonita. On remand, the court may still award some of this to Bonita if it concludes that a lack of division will cause her to suffer hardship under § 767.255, STATS.[1] In addition, the court may determine that this decision affects its prior presumption of equal division and adjust the original division based on equitable considerations embodied in § 767.255.

---

[1] We note "hardship" cannot be based on the belief that the inclusion of the exempt gifted property in the property division is necessary to achieve fairness and equity. A finding of "hardship" requires the trial court to conclude that the inclusion of the exempt asset is necessary to eliminate or alleviate a financial difficulty or privation which would otherwise exist if the property division were limited to the marital property. *Popp v. Popp,* 146 Wis. 2d 778, 792, 432 N.W.2d 600, 605 (Ct. App. 1988). The "hardship" determination must be made in light of the facts and history of the case and the relative financial circumstances of the parties before and after the divorce. This consideration should not be limited to essential needs only. *Id.* at 792-93, 432 N.W.2d at 605.

██

In sum, Fredric has made a prima facie case that the cottage was gifted property and is exempt. And there is no dispute that the identity of the cottage had not been changed. However, Bonita failed to show that, to a reasonable certainty by the greater weight of the credible evidence, the cottage lost its exempt status because its character had not been preserved. *See Brandt*, 145 Wis. 2d at 407, 427 N.W.2d at 131. We reverse the trial court's finding to the contrary and we remand for further proceedings consistent with this decision.

No costs to either party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.