IN RE the MARRIAGE OF: Diane O. FRIEBEL, Petitioner-Appellant-Cross-Respondent,

v.

Daniel E. FRIEBEL, Respondent-Respondent-Cross-Appellant.

Court of Appeals

*No. 93–0846. Oral argument November 17, 1993.—Decided December 21, 1993.*

(Also reported in 510 N.W.2d 767.)

287

On behalf of petitioner-appellant-cross-respondent, the cause was submitted on the briefs of *I. Gregg Curry IV* and *John A. Esler* of *McCarty, Curry, Wydeven, Peeters & Riester* of Kaukauna and orally argued by *I. Gregg Curry IV*.

On behalf of respondent-respondent-cross-appellant, the cause was submitted on the briefs of *Bruce Chudacoff* of *Chudacoff and Liebzeit* of Appleton.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Diane Friebel appeals a divorce judgment dividing assets in her bank account equally between her and her former husband, Daniel Friebel. Diane argues that all the assets deposited into her account were exempt from division under sec. 767.255, Stats.[1] She claims that the court erroneously deter-

---

[1] Section 767.255 states in part:

mined that some of these assets were subject to division at divorce and that property gifted to her was untraceable because it had been commingled with the property subject to division. Because we conclude that the trial court erred in its determination of which assets in the account were gifted to Diane, and because the error affected its tracing inquiry, we reverse and remand to the trial court for further proceedings.

Daniel cross-appeals and argues that the court erroneously exercised its discretion by (1) denying him interest on the division of the property that was subject to division; (2) double-counting certain assets awarded in the division; and (3) concluding that a capital gain reported on the couple's income tax return was not divisible. He also claims that the court erred by finding that a family van was subject to division rather than a gift from Diane to him. We reject these arguments and affirm in part.

## BACKGROUND

Diane and Daniel were married on May 17, 1974. In February of 1987, Diane's father, Douglas Ogilvie, created an irrevocable spendthrift trust naming Diane as the beneficiary. This trust, hereinafter referred to as the main trust, was funded with stocks. By its terms, the trustee had discretion to distribute trust principal, but was required to distribute net income to Diane at

least annually. Diane had no right to demand trust corpus.[2] The trustee was required to distribute one-third of the trust corpus to Diane on her fortieth birthday, one-half of the remaining corpus on her forty-fifth birthday and the remaining principal on her fiftieth birthday.

Diane's father also established an irrevocable trust in 1981, naming his wife and all his children, including Diane, as beneficiaries. The trust was funded with $25,000 and real estate. By its terms, the trustee, Valley Bank, had sole discretion to pay any income generated by the trust to beneficiaries. The trust was to pay equal shares of trust principal and undistributed net income to the beneficiaries upon its termination. This trust will be referred to as the real estate trust.

During the marriage, dividend income generated from the stocks in the main trust was distributed to Diane. Diane placed this income in an investment account at Valley Bank. From 1987 through 1991, $295,522.05 was distributed from the main trust and deposited into Diane's investment account. The real estate trust was dissolved in December 1991, and Diane's share, $31,735.13, was also placed into her investment account. During this same period, Diane's parents gifted $66,000 that she also placed into her investment account.

Throughout the marriage, Diane's investment account, which held only the distributions from the main trust, real estate trust and the cash gifts, also generated income. By the end of 1991, the investment account had earned $11,361.74 interest income, $3,955.36 in realized gains and unrealized gains of

---

[2] Diane did have the right to withdraw $10,000 of each lifetime gift her father made to the trust, but she never exercised this right and it lapsed.

$4,084.56. Thus, at the time of the divorce, a total of $412,658.84 in assets had been placed in Diane's investment account.

The trial court determined that the judgment of divorce was granted for the purposes of property division on April 8, 1992. This was before Diane's fortieth birthday. At this date, $153,653.85 remained in Diane's investment account. The main trust had $4,528.80 in undistributed income. There was also a $14,500.74 capital gain realized by the main trust that the trustee had not distributed to Diane as of the date of divorce, although the couple had reported the gain on their 1991 tax return.

In dividing the couple's property, the court faced the problem whether each of the four separate components of Diane's investment account was subject to division. The court concluded that although Diane's interest in the corpus of the main trust was a gift not subject to division, under *Arneson v. Arneson*, 120 Wis. 2d 236, 355 N.W.2d 16 (Ct. App. 1984), the distributions of trust income were subject to division because they were income generated from gifted property. It concluded that distributions from the real estate trust and the cash gifts were gifts not subject to division. Finally, the court concluded that any income generated by the investment account was also divisible.

The court then addressed whether gifts to Diane had retained their character and identity. While it concluded that the character of the gifts remained unchanged, it concluded that the gifts had not retained their identity. The gifts had become so commingled with the income distributions from the main trust and the income generated by the investment account that identification and valuation of them was purely speculative. Accordingly, the court concluded that the entire

investment account was divisible under sec. 767.255, Stats. The undistributed dividend income totaling $4,528.80 that remained in the main trust was also held to be divisible. The court concluded that the undistributed realized capital gain in the main trust was not subject to division because the trustee had not, nor was required to, distribute it.

The court's decision on the property division was written on August 10, 1992. The trial court held that interest would not begin to accrue on Diane's balancing payment to Daniel until ninety days after its decision on the divisibility of the investment account. Interest would accrue as of the April 8 divorce judgment if Diane did not make the balancing payment to Daniel within ninety days.

As for Daniel's share of property, the court awarded him several investment and bank accounts. The court valued four of these as of the date of a temporary hearing because Daniel had violated its temporary order prohibiting the parties from disturbing their accounts. Daniel maintains he deposited the assets from these accounts into a checking account. This was the only account that increased in value, and the court awarded it to Daniel and valued it as of the date of trial.

Finally, the court determined that a conversion van purchased with funds withdrawn from Diane's investment account was not a gift to Daniel from Diane. Therefore, the court concluded that it was subject to division.

## DIVISION OF THE INVESTMENT ACCOUNT

Diane argues that the court erroneously determined that her investment account was subject to division under sec. 767.255, Stats. Section 767.255 excludes from division any property acquired by either

party prior to or during the marriage by gift, bequest, devise or inheritance, except upon a finding of hardship. Diane argues that all of the assets deposited into that account were gifts to her that were not divisible.

A property division rests with the sound discretion of the trial court. *Brandt v. Brandt*, 145 Wis. 2d 394, 406, 427 N.W.2d 126, 130 (Ct. App. 1988). An exercise of discretion premised on factual or legal error is an erroneous exercise of discretion. *Id.* To the extent Diane's arguments require us to construe and apply sec. 767.255, Stats., to the facts before us, we are faced with a question of law that we review de novo. *Id.*

## A. INCOME FROM MAIN TRUST

We begin by evaluating whether the distributions of income from the main trust were gifts to Diane that were not subject to division. Diane views the trust as the gift and the distributions of income under the terms of the trust as simply the completion of the gift. Daniel, on the other hand, agrees the trust is the gift, but he interprets the gift to be limited to Diane's future interest in the trust corpus. He reasons that the distributions to Diane are income generated from the gifted corpus, which under *Arneson* are divisible upon divorce.

Our courts have interpreted sec. 767.255, Stats., as exempting from division a gift *and* appreciation in the value of the gift that is due to the general economic conditions of inflation where the nonowning spouse does not contribute to the appreciation in value. *Plachta v. Plachta*, 118 Wis. 2d 329, 333, 348 N.W.2d 193, 195 (Ct. App. 1984). However, we have treated income generated from a gift differently.

*Arneson* established that income generated from the gift is distinct from the gift and from appreciation in the value of the gift, and is *not* exempt from division at divorce. *Id*. at 244-45, 355 N.W.2d at 20. In that case, we held that property purchased from income generated by gifted stock was subject to division at divorce. *Id.; see also Fowler v. Fowler*, 158 Wis. 2d 508, 517, 463 N.W.2d 370, 373 (Ct. App. 1990) (inherited stocks exempt from division, but stocks purchased from dividends of inherited stock not exempt).

*Arneson*, however, specifically left unanswered the question of whether income generated from every type of property interest is subject to division. *Arneson* noted that "certain other income or dividend plans do not vest control in the owner over such property, or the investment, reinvestment, or other spending decisions. We do not determine whether the rationale of this decision should extend to such situations." *Id*. at 245 n.6, 355 N.W.2d at 20 n.6. We must now determine whether *Arneson*'s rationale applies to income generated and distributed by a trust where the beneficiary has no control over the trust corpus.

*Arneson*'s rationale rested on a strict construction of sec. 767.255, Stats. We viewed income generated by an asset as income not in existence at the time of the gift. We thus noted that such property was *not* acquired by gift, bequest, devise or inheritance and therefore concluded that the income was subject to division. *Arneson*, 120 Wis. 2d at 243-44, 355 N.W.2d at 20. However, the asset generating income was stock that had already been acquired by the donee. The donee had legal title to the stock and consequently could have sold, traded or gifted his property interest in it. He had numerous ways to alienate all, or only a portion of, his property interests in his stock.

294

In contrast, the creation of the trust for Diane vested her with an equitable, but not a legal, title to the trust corpus. Corpus distributions were completely discretionary, and Diane never received any corpus distributions. The spendthrift provisions prevented Diane from alienating her future interest in the corpus. She would not receive a possessory interest in any of the corpus unless she survived to her fortieth birthday, at which point she was to receive one-third of the corpus. We conclude that because Diane had no present or past possessory interest in trust corpus, she had not yet acquired it within the meaning of sec. 767.255, Stats. Thus, the income generated by the corpus was not generated by property Diane had acquired. Consequently, the distributions of income to her were not generated by acquired gifts, but were themselves gifts.

We note at least one other jurisdiction has adopted a similar rule. Texas courts have held that where a trust grants only an income interest but no power over the corpus, the income is the sole gift of the settlor and thus the beneficiary's separate property. *Buckler v. Buckler*, 424 S.W.2d 514, 515-16 (Tex. Civ. App. 1967). However, where a beneficiary has power to reduce the corpus to a present possessory control, any income generated from that portion is community property. *In re Long*, 542 S.W.2d 712, 717-18 (Tex. Civ. App. 1976); *see generally, Wilmington Trust Co. v. United States,* 4 Cl.Ct. 6, 12 (1983), *aff'd,* 753 F.2d 1055 (5th Cir. 1985); Michael Diehl, *The Trust in Marital Law: Divisibility of a Beneficiary Spouse's Interests on Divorce,* 64 TEX. L. REV. 1301 (1986).

## B. INCOME FROM REAL ESTATE TRUST

An examination of the real estate trust and distributions from it yields a similar result. Daniel argues that $12,255.13 of the distribution from that trust was subject to division because it reflected appreciation of the trust resulting from trustee management paid for by income generated by trust corpus. He reasons that because the income generated from the corpus is subject to division and was used to manage the trust to cause its appreciation, the appreciation is divisible. We disagree.

The trust document required payment to the trustee from net income prior to distributions. Distributions were entirely within the discretion of the trustee, and Diane received no distributions prior to the termination of the trust. She was one of only several beneficiaries and, as with the main trust corpus, Diane had no dominion over the real estate trust. We thus conclude, as did the trial court, that the real estate trust distribution was a gift.

## C. CASH GIFTS AND INCOME FROM THE INVESTMENT ACCOUNT

Neither party challenges the conclusion that the cash gifts Diane received from her parents were gifts that were not divisible at divorce under sec. 767.255, Stats. The remaining asset in Diane's investment account to be analyzed is the income and capital gains generated by the account. Diane acknowledges that these are not gifts, but argues that they should nevertheless not be subject to division because Valley Bank managed the investment account and neither she nor Daniel exercised any control over it. She contends that

her case is analogous to *Wierman v. Wierman*, 130 Wis. 2d 425, 387 N.W.2d 744 (1986), where the supreme court held that the increase in value in the wife's business interest resulting from her father's management was not subject to division because neither party actively caused the increase.

We conclude that *Wierman* is not applicable. In *Wierman*, the court noted that the gift did not generate income separate and distinct from itself, but rather was a return of capital and profits. *Id.* at 438, 387 N.W.2d at 750. Thus, *Wierman*'s holding applies to income resulting from a return of capital or profits taken on appreciation of capital, but does not apply to income generated by the gift itself. We view the income generated by Diane's investment account to be no different from the dividends generated by stock in *Arneson*. Thus, the $11,361.74 interest income generated by Diane's investment account is income generated from her gifts and is subject to division.

The $3,955.36 in realized gains and unrealized gains of $4,084.56 may stand on different footing. The record is unclear whether these gains represent profits taken on the appreciation of stocks in Diane's investment account. These gains may not be subject to division if they represent appreciation or they may be subject to division under *Arneson*. On remand, the trial court will have to make this finding of fact. However, it is clear that at most $19,401.66 (the interest plus the gains) of the assets deposited into Diane's investment account were properly subject to division.

## D. CHARACTER AND IDENTITY OF THE PROPERTY IN THE INVESTMENT ACCOUNT

Our cases make clear that while gifted property is not normally subject to division at divorce, if the property has lost its character or identity through commingling with divisible property, then all the property is subject to division. *Trattles v. Trattles*, 126 Wis. 2d 219, 376 N.W.2d 379 (Ct. App. 1985). Character addresses the manner in which the parties have chosen to title or treat gifted or inherited assets. *Brandt*, 145 Wis. 2d at 410, 427 N.W.2d at 132. Changing the property's character can transmute it to divisible property. *Id.* Such changing of title occurs when, for example, a party transfers her gifted property into joint tenancy or uses the property to purchase property for the mutual enjoyment and use of the marriage. *Trattles*, 126 Wis. 2d at 225-26, 376 N.W.2d at 383.

The court concluded that Diane's gifted property retained its character. Daniel does not contest this conclusion. We agree with the court. All of Diane's gifted property, including the distributions from the main trust, were kept in her separately titled investment account. Diane never transferred this property into a joint account. While she used some of these assets to purchase property for the marriage, items that indisputably became subject to division, she never demonstrated any donative intent with regard to the remaining assets in her investment account. Thus, her gifted property retained its character.

Identity addresses whether a gifted or inherited asset has been preserved in some present identifiable form so that it can be meaningfully valued and assigned. *Brandt*, 145 Wis. 2d at 411, 427 N.W.2d at 132. Daniel asserts the trial court properly concluded

that the gifts to Diane had become so commingled with divisible property as to make valuation of her property completely speculative. Commingling is not per se fatal to the exempt status of a gift; rather, the inquiry is whether the gifted component can be valued. *Id.* at 412, 427 N.W.2d at 132.

All the assets deposited into Diane's account were gifts to her except readily determinable income generated by the account. As of the date of divorce, Diane's account received a total of $412,658.84. Thus, at most, five percent, $19,401.66, was divisible property. We conclude that the entire account was not tainted by and so commingled with the five percent of divisible property as to convert the remainder of the account into divisible property.

Diane is willing to concede that all withdrawals were made from her gifted property. She is willing to subtract the full value of divisible property from the remaining $153,653.85 in the investment account and the $4,528.80 of undistributed main trust income that was erroneously determined to be divisible. Her gifted property is easily valued by subtracting the property subject to division from the investment account. Thus, on remand, the court will be required to determine how much of the income generated by the account is divisible and subject the full amount to division. The remaining portion is to be awarded to Diane.

Because the court determined that the entire investment account was subject to division, it did not consider whether Daniel would suffer hardship as a result of its division. On remand, the court may still award some of this to Daniel if it concludes he will suffer hardship under sec. 767.255, Stats. In addition, the court may determine that this decision affects its

prior presumption of equal division and adjust the original division based on equitable considerations embodied in sec. 767.255.

## CROSS-APPEAL

On cross-appeal, Daniel asserts that the court erroneously exercised its discretion by awarding interest on the property division as of ninety days after August 10, 1992, rather than as of the date of trial. An interest award on property division is within the trial court's discretion and is overturned by our court only if the trial court erroneously exercised its discretion. *Corliss v. Corliss*, 107 Wis. 2d 338, 320 N.W.2d 219 (Ct. App. 1982). However, because our decision changes the amount of property subject to division and requires the trial court to reconsider the distribution, it must redivide the parties' property. Therefore, the propriety of the court's interest award is no longer properly before us.

Daniel also claims that the court double counted certain assets awarded to him. The court's temporary order made the parties responsible for their own debts as of the date of the order and restrained them from encumbering or disposing of assets or property, including some investment and checking accounts held in Daniel's name. Contrary to this order, Daniel liquidated the investment accounts to pay for what the court determined were his individual debts. Daniel argues that some portion or all of these liquidated accounts were shifted to the checking account in his name.

Because Daniel violated the temporary order, when the court awarded the investment and checking accounts to Daniel it valued the investment accounts

300

as of the time of the temporary order rather than at the time of trial. However, it valued the checking account as of the date of trial. Daniel argues that this error resulted in a double counting of assets.

At a hearing on this matter, the court made it clear that Daniel had the burden of demonstrating a good reason for violating the order and that the money had not been depleted. Daniel attempted to trace the funds from the investment accounts into the checking accounts. The court, however, explained it was not satisfied that he had met his burden of accounting for the depletion of assets. It therefore awarded the checking account valued as of the date of trial. Because the court explained its reasons for the different valuation dates and its reasoning was the product of rational mental processes, it did not erroneously exercise its discretion.

Daniel next argues that the court erroneously found that a van purchased with money from Diane's investment account was subject to division. Daniel argues that the evidence indicated the van was a gift from Diane to him. A trial court's factual findings are not set aside unless they are clearly erroneous. Section 805.17(2), Stats. Evidence in support of a contrary finding must constitute the great weight and clear preponderance of the evidence. *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 249-50, 274 N.W.2d 647, 650 (1979).

The trial court's finding is not clearly erroneous. Diane testified that she did not recall using the term "gift" in describing the purchase, while Daniel was less than certain that the van was a gift to him. The court weighed the evidence and found Diane's testimony to

301

be more credible. Therefore, this factual finding was not clearly erroneous.

Finally, Daniel argues that an undistributed capital gain of $14,500.74 earned by the main trust was subject to division. Daniel views this appreciation as divisible because it was reported as income on the couple's tax return and the appreciation was paid for by the couple's assets. We disagree. This gain had not been distributed to Diane at the time of divorce, and the distribution was wholly within the trustee's discretion. Furthermore, even had the gain been distributed to Diane, our prior analysis requires us to view it as a gift to her.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions. No costs on appeal.

CANE, P.J. *(concurring)*. I concur separately only on the issue of whether the income from the main trust was gifted property or property subject to division in this divorce action as part of the couple's marital estate. I think it can be analyzed in a very simple fashion. In addition to approaching this issue from the control aspect, I view this issue from a different perspective, namely, the intent of the donor.

It is undisputed that Diane's father set up a trust that had two parts, income and principal. The principal was to be distributed to Diane upon her reaching certain ages. Additionally, and most importantly, the father elected to treat the income from the trust separately. Both sides agreed at oral argument that the father had the power to, and in fact did, set up the trust so that the trust income could have been distributed

separately to anybody. However, in this instance he elected to arrange for the trust income to be distributed to Diane. If Diane's father had directed that the trust income be distributed to a third person such as John Doe, I do not think there is any question that we would view the distribution to John Doe as a gift. The fact that the father elected to arrange for the trust to distribute the income to his daughter Diane should not make it a non-gift.

Unlike *Arneson*, where the inheritance is the stock and ownership of the generated income is automatically imputed to the owner, the trust in this case purposefully separates the ownership of the trust income from the principal. When one bequeaths or gifts a stock, the generated income cannot be separately bequeathed or gifted. On the other hand, when a trustor establishes a trust, the income and principal can be distributed separately and to different beneficiaries. I understand that in most trusts, you have by its very nature generated income and also principal which is generally distributed later. However, it is this very feature that makes it different from other assets and allows the trustor to gift the income and principal separately. Therefore, when the trustor establishes a trust so that the income and principal are to be treated and distributed separately, as in our case, we should view it as separate gifts.

Consequently, I view this trust as establishing two gifts, namely the income and principal. Therefore, I would conclude the income was gifted property, but subject to losing its character or identity through commingling with divisible property as we discussed in the main opinion.