IN RE the MARRIAGE OF:

Dorothy Ann METZ, f/k/a Dorothy Ann Metz-Keener,
Petitioner-Appellant-Cross-Respondent,†

v.

Theodore James KEENER, Respondent-Respondent-
Cross-Appellant.

Court of Appeals

*No. 97–1443–FT. Submitted on briefs October 3,
1997.—Decided December 14, 1997.*

(Also reported in 573 N.W.2d 865.)

†Petition to review denied.

On behalf of the petitioner-appellant-cross-respondent, the cause was submitted on the briefs of *John Barry Stutt* and *Gerald M. Crawford* of *Stewart, Peyton, Crawford, Crawford & Stutt of Racine*.

On behalf of the respondent-respondent-cross-appellant, the cause was submitted on the brief of *John O. Olson* of *Braden & Olson of Lake Geneva*.

Before Snyder, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J.   Dorothy Ann Metz (formerly, Metz-Keener) appeals from a property division provision in a divorce judgment involving her former husband, Theodore (Ted) James Keener. Before her marriage to Ted, Dorothy had inherited the shares of a corporation. The trial court included a retained earnings fund of this inherited corporation in the marital estate. Dorothy challenges this ruling. We hold that the corporation's retained earnings fund was properly included in the marital estate. We affirm this provision of the judgment.

Ted cross-appeals the trial court's denial of maintenance. He argues that the trial court's ruling improperly requires him to invade his property division award to maintain his standard of living. We disagree. We also affirm this portion of the judgment.

## FACTS

Dorothy and Ted were married on December 3, 1987, separated in 1994 and divorced in 1997. Dorothy had been twice previously married and Ted once. The parties had no children from their marriage. At the time of the divorce, Dorothy was fifty-nine and Ted sixty-nine years of age. Prior to her marriage to Ted, Dorothy was married to Richard Metz. Richard died on June 8, 1984. At the time of his death, Richard owned substantial assets, including all the stock in 2100 Lathrop, Inc., a Subchapter S corporation which operated a McDonald's franchise in Racine, Wisconsin. Dorothy inherited all of Richard's estate which was valued in excess of $2,000,000. The corporation was valued for federal estate tax purposes at $882,144.

Since the inheritance and during her marriage to Ted, Dorothy successfully managed and expanded the corporation. Her income from the corporation has

increased from $52,000 in 1987, the year of the parties' marriage, to $148,000 in 1995. Since the inheritance, the corporation has retained some of its earnings in an "accumulated adjustment account." The value of this retained earnings account steadily increased both before and during the parties' marriage, eventually reaching a level of $714,000. It is this retained earnings fund which gives rise to this appeal.

Just prior to her marriage to Ted, Dorothy purchased a second McDonald's franchise. She utilized a portion of the corporation's retained earnings fund to make this purchase. The lease for the building site and the franchise agreement were executed personally by Dorothy and she then assigned these interests to the corporation. After the commencement of this action and just prior to the granting of the divorce, Dorothy purchased a third McDonald's franchise and again assigned this interest to the corporation.

At the time of the marriage, Ted owned and operated a number of small businesses. Ted retired from his involvement in these businesses shortly after the parties were married.

During their brief marriage, the parties enjoyed a very comfortable standard of living. They had multiple residences, traveled frequently, joined a country club and bought a boat.

The trial court valued the marital estate at $1,158,407. All but $119,000 of this amount represented Dorothy's holdings. The parties do not dispute these valuations, and the trial court's written opinion expressly noted that valuation was not at issue in the case. The trial court did not include Dorothy's inherited shares of stock in the marital estate, and Ted does not challenge this ruling. However, the trial court

did include the $714,000 retained earnings fund as a marital asset.

The trial court's property division awarded Dorothy approximately 60% of the marital estate and Ted 40%. Neither party disputes this percentage allocation. The trial court awarded Ted his assets in the amount of $119,000 and ordered Dorothy to make a balancing payment in the amount of $345,000, payable in five annual installments of $69,000. The trial court did not award a fixed amount of interest on these deferred payments. Instead, the court ordered that the installment payments be increased on an annual basis by the lesser of 4% or a formula using the consumer price index for the "greater Milwaukee area all services."[1] Under no circumstances, however, were the installment payments to Ted to be reduced.

Dorothy filed a motion for reconsideration, contending that the inclusion of the retained earnings in the marital estate was contrary to law. Dorothy requested that the marital estate be reduced by $714,000. The trial court denied Dorothy's request. Dorothy appeals.

Ted requested maintenance. The trial court denied this request. Ted cross-appeals this ruling.

---

[1] The trial court described the formula as follows: "[t]he amount due multiplied by a fraction, the numerator which is the CPI for the greater Milwaukee area all services for the year that the payment is to be made and the denominator is the CPI for the Milwaukee area all services 1997."

## DISCUSSION

### Appeal

*Property Division*

"A property division rests with the sound discretion of the trial court." *Friebel v. Friebel*, 181 Wis. 2d 285, 293, 510 N.W.2d 767, 770 (Ct. App. 1993). We will not reverse a discretionary decision if the record discloses that discretion was in fact exercised and we can perceive a reasonable basis for the decision. *See Prahl v. Brosamle*, 142 Wis. 2d 658, 667, 420 N.W.2d 372, 376 (Ct. App. 1987). Underlying discretionary decisions may be factual determinations that we do not upset unless clearly erroneous. *See Hollister v. Hollister*, 173 Wis. 2d 413, 416, 496 N.W.2d 642, 643 ( Ct. App. 1992).

Generally, a spouse's inheritance, either before or during the marriage, is not subject to property division upon divorce unless the refusal to divide the property will create a hardship. *See* § 767.255(2), STATS. Dorothy contends that the corporate earnings in the retained earnings account are a component of the appreciation of her inherited corporation and, as such, are not part of the marital estate and should not have been subject to property division. Ted does not argue that he is entitled to any portion of the gifted shares of the corporation. Rather, Ted contends that the retained earnings fund is a divisible marital asset because it was produced after the inheritance by income generated by the corporation.[2]

---

[2] Ted did not assert any claim against the appreciated value of the corporation represented by the two additional McDonald's franchises purchased after the marriage. Instead,

We begin by observing that much of Dorothy's appeal is premised upon her view that the corporation's retained earnings represent appreciation in the value of the corporation itself rather than income generated by the corporation. While we understand the distinction which Dorothy is drawing and fully accept that a corporation's retained earnings may serve to increase the value of the stockholder's shares, the property division law of this state clearly views income generated by an exempt asset as separate and distinct from the asset itself. *See Arneson v. Arneson*, 120 Wis. 2d 236, 244, 355 N.W.2d 16, 20 (Ct. App. 1984). On this threshold basis, we reject much of Dorothy's arguments.

In making its ruling, the trial court relied principally on *Arneson*. There, this court considered whether property purchased with income generated by exempt stock should be included in the marital estate. *See id.* at 242, 355 N.W.2d at 19. We stated:

> For purposes of determining components of a marital asset, we view income generated by an asset as separate and distinct from the asset itself. We also view such income separate and distinct from the appreciation of the asset itself. We see nothing in the developing Wisconsin law excluding appreciation of gifted or inherited property from a marital estate as mandating that property purchased with the income from such property also be excluded.

*Id.* at 244–45, 355 N.W.2d at 19. We conclude that the trial court properly saw this as an *Arneson* case and

Ted limited his claim to the retained earnings fund of the corporation which was partially used by Dorothy to purchase the additional franchises.

properly included the retained earnings fund in the marital estate for purposes of property division.

Dorothy attempts to distinguish this case from *Arneson* on the basis that the retained earnings fund did not pass through her hands for the purposes of further use or reinvestment because it was always held by the corporation. However, Dorothy's argument is not supported by the record or the trial court's findings. Dorothy testified that she used portions of the retained earnings to purchase the additional McDonald's franchises, and the trial court so found. Moreover, under the Subchapter S structure of the corporation, Dorothy had paid income taxes on the retained earnings. As such, she had full access, control and right to the undistributed income.[3]

The trial court also properly cited to *Friebel* in support of its decision. There, we considered whether distributed income from a trust was eligible for

---

[3] Basically, a Subchapter S corporation is a pass-through entity. The character of items of income deduction, loss, and credit of the corporation passes through to the shareholders in the same general manner as the character of these items of a partnership passes through to partners. *See* W. Eugene Jessup, TEFRA, DEFERRED COMPENSATION AND THE CHOICE OF THE BUSINESS STATUS: A PRE–1984 TAX REFORM ACT ANALYSIS, 14 CUMB. L. REV. 517, 526 (1983/1984). A Subchapter S corporation is not subject to the corporate income tax, except for the present tax on capital gains. *See id.* at 527.

One of the expert witnesses in this case described a Subchapter S corporation, in part, as follows:

> [A Subchapter S corporation] means that its income is taxed very similar to that of a partnership, meaning that the income of the corporation is taxed on the returns of the individual owners of the corporation . . . and [the individual owners] pay a tax on that income out of their own pocket . . . . A sub S, its income is reported by its owners and they pay the taxes . . . .

property division. That determination turned upon whether the trust beneficiary had a possessory interest in the income generating asset. *See Friebel,* 181 Wis. 2d at 295, 510 N.W.2d at 771. We concluded that it was not because the trust beneficiary did not have legal title to the trust corpus. *See id.* Therefore, we concluded that "the distributions of income to her were not generated by acquired gifts, but were themselves gifts." *Id.* Here, it is undisputed that Dorothy has full ownership and possession of all the corporate shares and that she is the sole managing force behind the corporation. Thus, unlike *Friebel,* the income generated by the corporation was not the inherited asset. As such, it was subject to division.

The trial court's ruling is also supported by *Fowler v. Fowler,* 158 Wis. 2d 508, 463 N.W.2d 370 (Ct. App. 1990). There, dividend income generated by inherited stock was used to procure additional stock. Relying on *Arneson,* the court held that "[t]he dividends constituted income generated by the stock asset rather than appreciation in value of the asset itself." *Id.* at 517, 463 N.W.2d at 373. Thus, the court concluded that the additionally purchased stock was properly included in the marital estate. *See id.*

We also reject Dorothy's argument that the retained earnings fund represented a component of the appreciated value of the corporation under *Plachta v. Plachta,* 118 Wis. 2d 329, 348 N.W.2d 193 (Ct. App. 1984). In *Plachta,* we held that the appreciated value of a gift is nonmarital property when the appreciation is due to the general economic conditions of inflation and the nonowning spouse has not contributed to the appreciation in value. *See id.* at 333, 348 N.W.2d at 195. Here, although Ted did not contribute to the appreciation in value, we are concerned with a

component asset of the corporation generated by the income of the underlying exempt property. *Plachta* concerned the appreciation of the exempt asset itself, not income generated by the asset. Nor did *Plachta* involve a new asset produced by the income of the underlying exempt asset. As such, this is an *Arneson* case, not a *Plachta*, case. Dorothy's reliance on *Plachta* is misplaced.

Dorothy also challenges the trial court's reliance on *Lendman v. Lendman*, 157 Wis. 2d 606, 460 N.W.2d 781 (Ct. App. 1990), in its reconsideration ruling. Instead, Dorothy contends that *Lendman* supports her position because the corporation retained the earnings for a legitimate business purpose. We recite the *Lendman* facts in some detail. Paul Lendman set up a close corporation and loaned a portion of his inherited funds to the corporation, which, in turn, executed a promissory note back to Paul. *See id.* at 609–10, 460 N.W.2d at 782–83. During the Lendmans' marriage, the corporation made payments on the note, significantly reducing the indebtedness and correspondingly increasing the value ·of the corporation. *See id.* at 610, 460 N.W.2d at 783. These payments came from the income earned by the corporation. *See id.* at 612, 460 N.W.2d at 783–84.

In the divorce proceedings, Paul's wife contended that the appreciation occasioned by retirement of the corporate debt should be included in the marital estate for purposes of property division. *See id.* at 610, 460 N.W.2d at 783. She also contended that retained earnings of the corporation should be considered as income to Paul for purposes of maintenance. *See id.* at 613, 460 N.W.2d at 784.

Relying on the *Arneson* distinction between the exempt asset and income generated by the asset, the

*Lendman* court held that the appreciation in value occasioned by application of corporate income to retirement of the corporate debt represented a marital asset subject to property division. *See id.* at 612, 460 N.W.2d at 784. However, as to maintenance, the court held that the retained earnings were not income for purposes of maintenance if the income was retained as "a necessary adjunct of a well-managed corporation." *See id.* at 614–15, 460 N.W.2d at 785. Because the issue on Dorothy's appeal concerns the property division, not maintenance, her reliance on the language from the maintenance portion of *Lendman* is misplaced.

Nonetheless, like the trial court, we conclude that the maintenance discussion in *Lendman* supports the court's inclusion of the retained earnings fund in the marital estate. The property division portion of *Lendman* did not expressly use the phrase "retained earnings." However, in the maintenance discussion, *Lendman* equated "retained earnings" with "earned surplus" which the court defined as "that resulting from the profitable operations of the company." *Id.* at 614, 460 N.W.2d at 785. That definition takes in the kind of corporate income which was used to reduce the corporate indebtedness in *Lendman*. Thus, under *Lendman,* retained earnings are treated differently for purposes of property division and maintenance: as to property division, retained earnings (or the appreciation in value occasioned by the expenditure of such earnings) are a marital asset subject to property division; however, as to maintenance, retained earnings are not an income stream to the shareholder if the earnings are retained for a legitimate business reason.

■ We conclude that the trial court properly determined that the retained earnings generated by Dorothy's inherited corporation represented income separate and distinct from the corporation itself. As such, the court properly included the retained earnings fund in the marital estate for purposes of property division.[4]

*Maintenance*

■ Ted cross-appeals the trial court's denial of his maintenance request.

The determination of the amount and duration of maintenance is in the discretion of the circuit court, and we will not disturb the determination of the court unless it reflects an erroneous exercise of discretion. *See Fowler*, 158 Wis. 2d at 519, 463 N.W.2d at 374.

Ted's principal complaint is that the trial court's denial of maintenance was based on the fact that he will be receiving property division installment payments over the five-year period following the divorce. Ted argues that the court's rationale violates the case law which holds that a court may not require a party to invade a property division award in order to

---

[4] Dorothy additionally argues that she had a duty to the corporation to retain its earnings in order to meet expenses and provide a reliable basis for future growth. She reasons that the marital estate was adequately compensated for the retention of these earnings because she was paid a substantial salary. In so arguing, Dorothy concedes that this court has previously rejected this argument. *See Schorer v. Schorer*, 177 Wis. 2d 387, 406, 501 N.W.2d 916, 923 (Ct. App. 1993). We are duty bound to follow a controlling opinion of the court of appeals. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246, 256 (1997).

meet living expenses where the other party is not required to make the same sacrifice. *See Dowd v. Dowd*, 167 Wis. 2d 409, 417, 481 N.W.2d 504, 507 (Ct. App. 1992). *See also Kennedy v. Kennedy*, 145 Wis. 2d 219, 226–27, 426 N.W.2d 85, 88 (Ct. App. 1988); *LaRocque v. LaRocque*, 139 Wis. 2d 23, 34–35, 406 N.W.2d 736, 740 (1987).

We acknowledge that the trial court did allude to Ted's property division payments in the course of making its ruling. Were we to limit our consideration of the trial court's maintenance ruling to just this comment, we might well agree with Ted. However, certain additional comments by the trial court regarding the installment property division payments cast the court's remark, upon which Ted relies, in a somewhat different light. In these additional remarks, the court noted that the payments were to be made annually, not monthly. The court then stated, "This will allow [Ted] the use of that money on an annual basis so it may be invested and hopefully grow. . . . *The property division award and the way it is paid will allow him to meet his current needs and save for the future.*" In conjunction with these remarks, the court also noted that certain real estate awarded to Ted had income producing potential. The totality of these comments suggest that the court was not necessarily viewing Ted's property division award as a means of support, but rather as a means of producing separate income available for support.

The trial court's ruling rests on an additional basis. When considering the fairness factor, the court stated:

> [Ted] through circumstances married a very wealthy individual. During the course of the

638

marriage, over a million dollars worth of assets were accumulated which are subject to division by the court. Almost none of those assets were accumulated through the efforts of [Ted]. As a result of the marriage, [Ted] has realized a significant increase in the size of his estate. . . . The court does not feel . . . when looking at all the factors and the circumstances surrounding the marriage, the relationship of the parties during the marriage and the contributions to the marriage by [Ted] that a maintenance award would be fair.

As we have noted, the trial court awarded Ted 40% of a marital estate comprised almost entirely of Dorothy's assets and valued in excess of one million dollars. The property division is a factor bearing on maintenance. *See* § 767.26(3), STATS. In addition, this was a short term marriage: the parties were married in December 1987, separated in 1994 and the action was commenced in December 1995. The length of the marriage is also a factor bearing on maintenance. *See* § 767.26(1).

Ted cites to *LaRocque,* which requires that a maintenance determination address the two distinct, but related, objectives in a maintenance award: support and fairness. *See LaRocque,* 139 Wis. 2d at 33, 406 N.W.2d at 740. Ted does not challenge the trial court's findings with respect to the fairness objective. Rather, he seeks maintenance based upon the support objective. He complains that the denial of maintenance will not allow him to support himself at the standard of living which he enjoyed during the marriage. *See* § 767.26(6), STATS.

Even if we were to agree with Ted that the denial of maintenance does not allow him to continue the very

comfortable life style which he enjoyed during the parties' brief marriage, we note that the weight to be given to the relevant factors under the maintenance statute is committed to the trial court's discretion. *See Herlitzke v. Herlitzke*, 102 Wis. 2d 490, 495, 307 N.W.2d 307, 310 (Ct. App. 1981).[5] Here, the trial court chose to give Ted a very favorable property division by awarding him 40% of a martial estate in excess of $1,000,000. The bulk of this property was Dorothy's. Ted did not contribute to the appreciation of the marital estate during the marriage. He lived off of Dorothy's largesse during the marriage. He has been handsomely compensated for the few years devoted to this marriage. Under the facts of this case, we hold that the trial court did not misuse its discretion by denying maintenance to Ted.

## CONCLUSION

We conclude that the retained earnings fund of Dorothy's inherited corporation represents a divisible marital asset generated by the income of the exempt asset. As such, the trial court's inclusion of the retained earnings fund in the marital estate was proper. We further conclude that the trial court did not erroneously exercise its discretion when it denied Ted's request for maintenance.

*By the Court.*—Judgment affirmed.

---

[5] We realize that *Herlitzke v. Herlitzke*, 102 Wis. 2d 490, 307 N.W.2d 307 (Ct. App. 1981), concerned the factors under the property division statute. It logically follows, however, that the same rule should apply to the factors under the maintenance statute. If there be any question about this, we now extend the *Herlitzke* rule to the maintenance statute.